[No. 2755–2.   Division Two.   January 22, 1979.]

ERNEST JARRARD, ET AL, *Respondents,* v. DONALD W. SEIFERT, ET AL, *Appellants.*

*Thomas C. Lowry,* for appellants.

*Tuell, Anderson & Hudson* and *Grant L. Anderson,* for respondents.

JOHNSON, J.*—Ernest Jarrard, a real estate developer, and Paul Putnam, a contractor, formed a joint venture to construct nine fourplexes on property located at 44th Street and Bridgeport Way in Pierce County. It was a condominium–type arrangement with each fourplex to be sold with the land beneath it only, and a common, undivided interest in the surrounding property. In the spring of 1973, Mr. Jarrard employed the defendants, Seifert, Forbes & Berry, an architectural, engineering, and land survey firm, to draw up a site plan, place the fourplexes on the limited–size property, lay out the parking, and secure the approval of the county authorities for said site plan. The defendants prepared a site plan, submitted it to the county, corrected it because of some objections, and it was approved. The defendants were further employed to prepare precise legal descriptions for each fourplex and to place stakes on the ground in conformity with the descriptions. The defendants did not check the preliminary title report or consult the auditor's office to ascertain whether there were any easements. The legal descriptions were prepared and the stakes set. At about the time the stakes were set for fourplex "D", a manhole was discovered by the surveyor, Mr. Cantor, who brought it to the attention of Mr. Putnam. Mr. Putnam immediately went to the Westside Water District office, where he talked with Mr. Bleecker, the manager, who in turn came to the site and brought his maps which showed an easement and a sewer line. He discussed the matter with Mr. Cantor. There is a conflict in the evidence as to whether or not Mr. Putnam was present during all of that conversation. Mr. Cantor reported to Mr. Berry of defendant's firm, but nothing further was done by the defendants. The stakes were not removed. Approximately 2 weeks later, Mr. Putnam commenced constructing the fourplexes, including "D", on the land staked by the defendants. When the fourplex "D" was nearly completed, it was discovered

---

*Judge Bertil E. Johnson is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

that one corner of it encroached on the easement, and as a result it was necessary to relocate the sewer. The plaintiffs paid the cost thereof, and brought this action to recover that cost from the defendants.

The court entered its findings of fact, conclusions of law, and judgment for the plaintiffs in the sum of $12,612.82. The defendants appeal and make 27 assignments of error, 12 of which are directed against the court's findings and 11 for the failure of the court to adopt the defendant's proposed findings.

We have read the entire record in this case. There was a considerable conflict in the evidence which was resolved by the court's findings of fact. We are of the opinion that the court's findings of fact are supported by substantial evidence.

■ When a trial court has based its findings of fact on conflicting evidence and there is substantial evidence to support the findings, the appellate court will not substitute its judgment for that of the trial court, even though it might have resolved a factual dispute differently. *Beeson v. Atlantic–Richfield Co.*, 88 Wn.2d 499, 563 P.2d 822 (1977); *Neiffer v. Flaming*, 17 Wn. App. 443, 563 P.2d 1300 (1977).

Defendants assign error to the trial court's examination of Mr. Bleecker and Mr. Berry. Mr. Bleecker at one point in his testimony testified that Mr. Putnam was present during his conversation with Mr. Cantor, and at another point that he did not remember. The trial court examined Mr. Bleecker to clarify that inconsistency. Mr. Berry also made some inconsistent statements, and the court examined him to clarify his testimony.

■ The trial court has broad discretion in propounding questions to witnesses in order that it may gain all the information possible to aid in correctly determining the disputed questions presented by the respective parties. *In re Estate of Ward*, 159 Wash. 252, 292 P. 737 (1930); *Dennis v. McArthur*, 23 Wn.2d 33, 158 P.2d 644 (1945); *In re Burtts*, 12 Wn. App. 564, 530 P.2d 709 (1975). We find there was no abuse of discretion in this case.

■ Did the trial court err in allowing plaintiffs to present testimony on the standard of care (custom of the trade, common practice) in the engineering and land survey profession? There is no argument set forth in defendant's brief to support this assignment of error, and no authority cited, therefore we need not address ourselves to it. However, we are of the opinion that such testimony was proper.

■ The defendants were employed as professional engineers and land surveyors because of their superior knowledge in that field. The plaintiffs were entitled to rely on that superior knowledge and to expect that such professionals would fulfill the duty of reasonable diligence, skill, and ability. *Loyland v. Stone & Webster Eng'r Corp.*, 9 Wn. App. 682, 514 P.2d 184 (1973). The standard of care (common practice) required that the defendants check for and discover easements, and if found, bring that fact to the attention of the owner, preferably by letter, and if the property is staked for a building that the stakes be removed.[1] Mr. Putnam did have some information in this case that there might be a problem, but he immediately called the manager of the water district, who came to the site with his maps and discussed the matter with the surveyor, Mr. Cantor. The court found that Mr. Putnam paid no further attention to the problem, believing it was a matter to be disposed of by the engineer. Mr. Cantor did bring it to the attention of Mr. Berry, who, even though he had a telephone conversation with Mr. Jarrard shortly thereafter, did not mention it. No letter was ever written. The stakes were not removed. Mr. Berry testified that the buildings should have been constructed on the stakes. The stakes not having been removed or orders to the contrary given, Mr. Putnam erected fourplex "D" on the stakes.

A case closely analogous to the facts in this case is *School Dist. 172 v. Josenhans*, 88 Wash. 624, 153 P. 326 (1915), wherein the court said at page 628:

---

[1] Mr. Berry testified that normally he would check the preliminary report or the auditor's records, but did not do so in this case.

If we accept the finding that the architects were paid for and did superintend the construction of the building, and that they certified the building as completed in accordance with the plans and specifications, then the respondents would be entitled to rely on the sufficiency of the construction, and although they may have detected what seemed to them to be faulty construction, they would be justified in relying on the appellants' judgment that it was a proper construction, as they had engaged the appellants to see that the construction was correct.

Here the plaintiffs had a right to rely on the acts and judgment of the defendants. The defendants failed to perform their professional duty with reasonable diligence, skill and ability.

We find no error, and the judgment is affirmed.

REED, A.C.J., and SOULE, J., concur.