261 P.3d 664 (2011)
163 Wn. App. 436
Steven and Karen DONATELLI, a married couple, Respondents,
v.
D.R. STRONG CONSULTING ENGINEERS, INC., a Washington corporation, Petitioner.
No. 65568-0-I.
Court of Appeals of Washington, Division 1.
July 25, 2011.
Publication Ordered September 12, 2011.
*665 Michael James Bond, Attorney at Law, Mercer Island, WA, for Appellant.
Justin D. Park, Romero Park & Wiggins PS, Bellevue, WA, for Respondents.
COX, J.
¶ 1 Professional engineers have a duty to exercise reasonable skill and judgment in performing engineering services.[1] That duty exists despite the assertion of the defense of the economic loss rule, which is now known as the "independent duty doctrine."[2]
¶ 2 Here, D.R. Strong Consulting Engineers, Inc., sought summary dismissal of the negligence and negligent misrepresentation claims asserted by Steven and Karen Donatelli solely on the basis that the economic loss rule bars these tort claims. The trial court denied this motion for partial summary judgment, and this court granted discretionary review.
¶ 3 Thereafter, the supreme court issued two opinions that modified then existing case law: Eastwood v. Horse Harbor Foundation, Inc.,[3] and Affiliated FM Insurance Co. v. LTK Consulting Services. Inc.[4] Specifically, the court held that professional engineers may be liable in tort despite the assertion of the independent duty doctrine, formerly known as the economic loss rule, as a defense.[5] In accordance with Eastwood and Affiliated, we affirm the trial court's denial of partial summary judgment to D.R. Strong on these tort claims and remand for further proceedings.
¶ 4 Steven and Karen Donatelli owned property in King County that they wanted to develop into two short plats (the "Project"). *666 Steven Donatelli signed a written agreement with D.R. Strong to perform six phases of engineering services for the Project.
¶ 5 King County issued its five-year preliminary approval for the Project in October 2002. But the Project was not completed within this time frame, and the preliminary approval expired in October 2007. Thereafter, D.R. Strong assisted the Donatellis in obtaining a new preliminary approval for the Project.
¶ 6 The real estate market crashed in 2008, before the Donatellis could obtain final plat approval and finish the Project. Ultimately, the Donatellis ran out of money and lost the property to foreclosure.
¶ 7 The Donatellis sued D.R. Strong, alleging breach of contract, Consumer Protection Act ("CPA") violations, negligence, and negligent misrepresentation. D.R. Strong moved for partial summary judgment on the CPA, negligence, and negligent misrepresentation claims. It argued that the negligence and negligent misrepresentation tort claims were barred by the economic loss rule.
¶ 8 The trial court granted summary judgment on the CPA claim, but denied summary judgment on the two negligence claims. The trial court also denied D.R. Strong's motion for reconsideration of the denial of its motion for partial summary judgment on these latter claims.
¶ 9 D.R. Strong petitioned this court for discretionary review, which we granted in August 2010. On November 4, 2010, the supreme court issued Eastwood and Affiliated.

DUTY
¶ 10 D.R. Strong argues that the trial court erred, as a matter of law, in denying its motion for partial summary judgment on the Donatellis' claims of negligence and negligent misrepresentation. This argument is based solely on its assertion of the affirmative defense of the economic loss rule. We hold that the independent duty doctrine, formerly known as the economic loss rule, does not bar assertion of these tort claims.
¶ 11 We will affirm an order granting summary judgment if no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law.[6] We review de novo a summary judgment order, taking the evidence and all reasonable inferences from it in the light most favorable to the nonmoving party.[7]
¶ 12 Here, the sole basis for D.R. Strong's motion for partial summary judgment was that the economic loss rule barred recovery for the tort claims the Donatellis asserted against it. The purpose of the economic loss rule is to bar recovery for an alleged tort where there is a contractual relationship between parties and the losses are economic.[8] When a party's economic loss potentially implicates contract and tort relief, the economic loss rule limits the party to contract remedies.[9] Whether the economic loss rule applied was purely a question of law and did not require that the trial court consider whether any genuine issues of material fact existed for summary judgment purposes.
¶ 13 Eastwood and Affiliated control the question of law that is before us: whether the independent duty doctrine, formerly known as the economic loss rule, bars recovery for tort claims against professional engineers. The supreme court decided both cases after we granted discretionary review in this case.
¶ 14 In Eastwood, the lead opinion, authored by Justice Fairhurst and signed by three justices, traces the origin and development of the economic loss rule. Those who signed the lead opinion concluded that the term is a misnomer and renamed it the "independent duty" doctrine.[10] The opinion holds that under the newly named doctrine *667 "[a]n injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract."[11]
¶ 15 In the plurality opinion in that case, which Justice Chambers authored, four justices agreed that the independent duty doctrine is a more appropriate term than the economic loss rule.[12] These four justices also concluded that a duty not to commit waste is and always has been "independent of and in addition to any duties assumed by" contract.[13]
¶ 16 Reading the lead and plurality opinions in Eastwood together, we draw several conclusions. First, a majority of the supreme court held that the "economic loss rule" is a misnomer and will now be known as the "independent duty doctrine." Second, a majority of the court also held that breach of a tort duty that arises independently from the terms of a contract is actionable, despite the assertion of the economic loss rule as a defense.
¶ 17 On the same day that the supreme court decided Eastwood, it also decided Affiliated. That case was before the Washington State Supreme Court on the basis of a certified question regarding Washington law from the Ninth Circuit Court of Appeals.[14]
¶ 18 There, a fire damaged the Seattle Monorail.[15] Investigation revealed that a faulty grounding system, recommended by LTK Consulting Services, an engineering firm, caused the fire.[16] Seattle Monorail Systems (SMS) was the company in charge of operating the Monorail. Its insurer, Affiliated FM (AFM), was subrogated to SMS' rights against LTK by virtue of paying the claim.[17] AFM then sued LTK for negligence.[18]
¶ 19 In U.S. District Court, LTK argued that the economic loss rule prohibited the lawsuit because the damages suffered were purely economic.[19] The U.S. District Court granted LTK's motion for summary judgment on that ground and AFM appealed to the Ninth Circuit.[20] The Ninth Circuit certified to the Washington State Supreme Court the following question:
May party A (here, SMS, whose rights are asserted in subrogation by AFM), who has a contractual right to operate commercially and extensively on property owned by non-party B (here, the City of Seattle), sue party C (here, LTK) in tort for damage to that property, when A(SMS) and C(LTK) are not in privity of contract?[[21]]
¶ 20 Affiliated was also a case in which the court issued three separate opinions. Justice Fairhurst authored the lead opinion, signed by only two justices. Justice Chambers authored the plurality opinion, which four justices signed. Chief Justice Madsen authored a third opinion, signed by three justices.
¶ 21 The lead opinion concludes that LTK, by undertaking to provide engineering services, assumed a duty of reasonable care, despite the assertion of the economic loss rule as a defense.[22] In so concluding, it applies the independent duty doctrine from Eastwood to a suit against professional engineers.[23]
¶ 22 The plurality opinion, authored by Justice Chambers and signed by four justices, concludes that the supreme court "has long recognized that engineers have a duty to exercise reasonable skill and judgment in *668 performing engineering services."[24] These justices viewed the case as "a straightforward claim of professional negligence," since professionals "owe a duty to exercise the degree of skill, care, and learning possessed by members of their profession in the community."[25] Concurring in the result reached by the lead opinion, Justice Chambers stated:
The only issue is whether LTK owed that duty to SMS as a concessionaire. I agree with the lead opinion that it did. This case does not implicate in any way the independent duty doctrine, formerly known as the `economic loss rule.'[[26]]
¶ 23 Carefully reading together these two opinions, we conclude that a majority of the supreme court in Affiliated held that professional engineers owe a tort duty of reasonable care to their clients. This is consistent with prior Washington law.[27] Moreover, this duty arises despite the existence of a contract between such engineers and their clients. That the plurality opinion did not embrace the application of the independent duty doctrine is irrelevant to this conclusion.
¶ 24 Here, Steven Donatelli, individually, signed a contract for engineering services with D.R. Strong. The contract limited D.R. Strong's professional liability to $2,500 or the fee charged, whichever is greater. The limitation of liability could be waived "upon the Client's written request made at the time of the initial authorization on a given project,. . . [if] the Client agrees to pay for this waiver an additional 5% of our total fee or $500, whichever is greater."[28] Steven Donatelli did not waive the liability limitation by paying this fee.
¶ 25 In their complaint in this action, the Donatellis allege the following:
Third Cause of Action: Negligence
. . .
23. Beginning in 2002, Defendant had a duty to complete the Project in a timely, competent, and cost effective manner. It failed to do so by, among other things, taking over 5 years to complete the work (and even then not completing all of the work), charging well over double the amount than it originally quoted to do the work; and having to redo work it had previously done due to it being inaccurate.
24. Defendant's breach of duty proximately caused Donatelli damages.
25. As a result of Defendant's negligence, Donatelli has suffered damages in an amount to be proven at trial, but which amount is believed to exceed $1,500,000.
Fourth Cause of Action: Negligent Misrepresentation
. . .
27. Defendant originally represented to Donatelli that the Project should be able to be completed within approximately one and ½ years, if not less time, from the date Defendant started working on the Project *669 and that the Project should not take more than $50,000 to complete.
28. These representations were false when made.
29. Defendant was negligent in making these representations.
30. Donatelli justifiably relied on these misrepresentations and agreed to have Defendant do the Project.
31. As a result of Defendant's misrepresentations, Donatelli has suffered damages in an amount to be proven at trial, but which amount is believed to exceed $1,500,000.[[29]]
¶ 26 In its motion for partial summary judgment, D.R. Strong argued that the Donatellis' negligence and negligent misrepresentation claims were barred by the economic loss rule. It did not address whether there were any genuine issues of material fact, the other prong of the summary judgment standard.
¶ 27 Eastwood and Affiliated control the dispositive issue in this review: whether D.R. Strong is entitled to judgment as a matter of law based on the independent duty doctrine, formerly known as the economic loss rule. Eastwood holds that the independent duty doctrine is not so broad as to bar claims based on extra-contractual duties between parties to a contract. Affiliated applies that rule to tort claims against professional engineers. In light of these cases, we conclude that D.R. Strong is not entitled to judgment as a matter of law on the Donatellis' negligence claims. Thus, denial of summary judgment was proper.
¶ 28 D.R. Strong attempts to distinguish Eastwood on its facts. It also notes that Eastwood does not overrule the previous economic loss cases. These arguments are unpersuasive.
¶ 29 While both of these distinctions are true, neither makes the holding in Eastwood inapplicable to this case. Eastwood represents an analytical shift in the way courts should interpret tort claims between contracting parties. While not overruling the case law under the economic loss doctrine, the court clarified the doctrine by requiring consideration of "whether the injury is traceable also to a breach of a tort law duty of care arising independently of the contract."[30] In analyzing the previous economic loss cases, the court explained that the results of each were also proper under the independent duty rule because the plaintiffs' claims did not arise independently of their contracts.[31] Therefore, although Eastwood is factually distinguishable from this case, its clarification of the independent duty doctrine is applicable here.
¶ 30 D.R. Strong argues that Affiliated is also distinguishable. It appears to argue that the narrowest ground of agreement in the case is that a claim for fire loss damages is properly recoverable in negligence. We disagree because this reading is entirely too limited.
¶ 31 The lead opinion, authored by Justice Fairhurst and signed by only two justices, discussed whether damages related to safety concerns, such as fire, would result in negligence liability for an engineer. That opinion applied the independent duty doctrine and concluded that the professional engineers in that case assumed a duty of care by undertaking engineering services.[32] We do not read the opinion to, necessarily, limit the scope of the duty to property damage.
¶ 32 In any event, the plurality opinion, authored by Justice Chambers and signed by four justices, concurred in the result reached in the lead opinion. It said nothing about limiting the duty to property damage. In fact, we read this opinion to be one in which there is "a straightforward claim of professional negligence."[33] The opinion does not indicate that such a straightforward claim should be limited to property damage. In sum, we conclude that Affiliated cannot be limited in the way that D.R. Strong urges.
*670 ¶ 33 At oral argument, D.R. Strong emphasized footnote three of the lead opinion.[34] D.R. Strong appears to argue that the footnote leaves intact the holding of Berschauer/Phillips Construction Co. v. Seattle School District No.1.[35]
¶ 34 Reading the footnote in context, it is a response to the concurring/dissenting opinion authored by Chief Justice Madsen and signed by only three justices. While the footnote does not specifically refer to Berschauer/Phillips, D.R. Strong maintains that the lead opinion implies that Affiliated and Eastwood do not modify the rule in Berschauer/Phillips. D.R. Strong misreads Affiliated and Eastwood.
¶ 35 In Berschauer/Phillips, the general contractor for a school construction project sued the architect, structural engineering company, and construction inspector for negligence.[36] As a result of the defendants' inadequate design plans and faulty inspection work, the contractor claimed that it spent more money than expected and also endured delays in construction.[37] The supreme court held that the general contractor could not sue in tort to recover damages due to these construction delays.[38] It reasoned that if design professionals had a duty to avoid a risk of increased business costs, the construction industry could not rely on the risk allocations in their contracts and would have an insufficient incentive to negotiate risk.[39]
¶ 36 Here, there is a contract between the Donatellis and D.R. Strong, unlike the situation in Berschauer/Phillips. Following the underlying logic of that case here, there would have been an opportunity for the Donatellis and D.R. Strong to adjust between themselves by contract the risks of loss. And, in fact, there was such an opportunity here, as the plain words of their contract make clear.
¶ 37 But Eastwood and Affiliated also clarify that where there is an independent duty that arises separate from the contract, breach of that duty will be actionable, despite the contract. In short, Berschauer/Phillips does not control the disposition of this case, despite the fact that it lives on.
¶ 38 Finally, D.R. Strong argues that the court of appeals cases on which the trial court relied to deny summary judgment in this case are distinguishable. We need not decide whether these cases are distinguishable. Under Eastwood and Affiliated, which were not decided at the time of the trial court's ruling, the court correctly denied summary judgment. It does not matter whether the court of appeals cases on which the trial court relied in its ruling are applicable.
¶ 39 In sum, we conclude that the independent duty doctrine, formerly known as the economic loss rule, does not bar the tort claims asserted in this case. In so concluding, we neither address whether D.R. Strong breached a duty to the Donatellis nor do we address the scope of such a duty. Likewise, we do not address causation or damages, other elements of a tort claim. These and other related questions are not currently before us.
¶ 40 We affirm the denial of the motion for partial summary judgment on these tort claims and remand for further proceedings.
WE CONCUR: DWYER, C.J., and SCHINDLER, J.
NOTES
[1] Affiliated FM Ins. Co. v. LTK Consulting Serv., Inc., 170 Wash.2d 442, 453, 461, 243 P.3d 521 (2010) (Chambers, J., concurring).
[2] Id. at 460-62, 243 P.3d 521 (Chambers, J., concurring).
[3] 170 Wash.2d 380, 241 P.3d 1256 (2010).
[4] 170 Wash.2d 442, 243 P.3d 521 (2010).
[5] Id. at 460-62, 243 P.3d 521 (Chambers, J., concurring).
[6] CR 56(c).
[7] Schaaf v. Highfield, 127 Wash.2d 17, 21, 896 P.2d 665 (1995).
[8] Alejandre v. Bull, 159 Wash.2d 674, 683, 153 P.3d 864 (2007).
[9] Id. at 681, 153 P.3d 864.
[10] Eastwood, 170 Wash.2d at 387-94, 402, 241 P.3d 1256.
[11] Id. at 402, 241 P.3d 1256.
[12] Id. at 417, 241 P.3d 1256 (Chambers, J., concurring).
[13] Id. (Chambers, J., concurring).
[14] See Affiliated FM Ins. Co. v. LTK Consulting Serv. Inc., 556 F.3d 920 (9th Cir.2009).
[15] Affiliated FM Ins. Co., 170 Wash.2d at 443, 243 P.3d 521.
[16] Id. at 444, 243 P.3d 521.
[17] Id. at 446, 243 P.3d 521.
[18] Id.
[19] Id. at 447, 243 P.3d 521.
[20] Id.
[21] Affiliated FM Ins. Co., 556 F.3d at 922.
[22] Affiliated FM Ins. Co., 170 Wash.2d at 460-61, 243 P.3d 521.
[23] Id. at 449-54, 243 P.3d 521.
[24] Id. at 461, 243 P.3d 521 (Chambers, J., concurring).
[25] Id. at 462, 243 P.3d 521 (Chambers, J., concurring).
[26] Id. (Chambers, J., concurring) (citing Eastwood, 170 Wash.2d at 398, 241 P.3d 1256).
[27] See Jarrard v. Seifert, 22 Wash.App. 476, 591 P.2d 809 (1979) (holding that professional engineers and land surveyors breached their duty to act with reasonable diligence, skill and ability by failing to search for existing easements on a property because it is common practice for these types of professionals to do so); Burg v. Shannon & Wilson, Inc., 110 Wash.App. 798, 43 P.3d 526 (2002) (holding that professional engineers have statutory duties under chapter 18.43 RCW and chapter 196-27 WAC to their clients, their employers, and members of the public with whom they have a "special relationship"); WAC 196-27A-020(2)("(a) Registrants are expected to strive with the skill, diligence and judgment exercised by the prudent practitioner, to achieve the goals and objectives agreed upon with their client or employer. They are also expected to promptly inform the client or employer of progress and changes in conditions that may affect the appropriateness or achievability of some or all of the goals and objectives of the client or employer. . . . (d) Registrants shall be competent in the technology and knowledgeable of the codes and regulations applicable to the services they perform. . . . (h) Registrants shall advise their employers or clients in a timely manner when, as a result of their studies and their professional judgment, they believe a project will not be successful.")
[28] Clerk's Papers at 26.
[29] Clerk's Papers at 4-5.
[30] Eastwood, 170 Wash.2d at 394, 241 P.3d 1256.
[31] Id. at 389-93, 241 P.3d 1256.
[32] Affiliated FM Ins. Co., 170 Wash.2d at 460-61, 243 P.3d 521.
[33] Id. at 462, 243 P.3d 521.
[34] Id. at 450 n. 3, 243 P.3d 521 ("The concurrence/dissent asserts that the independent duty inquiry is `a wholesale rejection of our prior cases' and is `little more than this court's ad hoc determination of whether a duty should lie.' Neither accusation is correct. Our decisions in this case and in Eastwood leave intact our prior cases where we have held a tort remedy is not available in a specific set of circumstances") (Chambers, J., concurring) (internal citations omitted, emphasis added).
[35] 124 Wash.2d 816, 881 P.2d 986 (1994).
[36] Id. at 819, 881 P.2d 986.
[37] Id.
[38] Id. at 825-27, 881 P.2d 986.
[39] Id. at 826-27, 881 P.2d 986.